FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 JUL 17 PM 2:46

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

NORTHERN DIVISION

Peter Kima
    Plaintiff
v.
Compass, Inc.
Serve:
Lawrence D. Coppel
233 E. Redwood Street
Baltimore, MD 21202

    Defendant

Case NO:  **RWT 14 CV 2281**

## COMPLAINT AND DEMAND FOR JURY TRIAL

**(Employment Discrimination in Violation TITLE VII OF THE CIVIL RIGHTS ACT)**

1. Peter Kima ("Kima"), Plaintiff brings this an action under the Title VII of the Civil Rights Act 1964 as amended by 42 U.S.C. § 2000e et seq., to secure protection of and redress deprivation of rights granted thereunder, and to obtain such other relief as is necessary to redress the injury to Plaintiff resulting from Defendant's violation of Title VII.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343.

3. The unlawful employment practices and discrimination forming the basis for Plaintiff's complaint occurred in the District of Maryland. The Plaintiff resides in the District of Maryland, and the acts giving rise to this action arose in the District. Venue in this District is therefore proper.

1

4. Declaratory, equitable relief, compensatory and punitive damages are sought pursuant to 42 U.S.C. 2000e-5(g)

5. Costs and attorney's fee are sought pursuant to 42 U.S.C. 2000e-5(k) and Fed. R. Civ. P. 54.

## PARTIES

6. Peter Kima ("Kima") is a male United States permanent resident of Cameroonian origin residing in Prince George's County, Maryland. Plaintiff is a 55 years black man with college education.

7. Upon information and belief, the Defendant, Compass, Inc. is a Maryland Corporation with its principal place of business in Montgomery County, Maryland. Upon information and belief Compass Inc. engages in an industry affecting commerce, and employs more than one hundred (100) regular employees.

## CONDITION PRECEDENT

8. Kima filed a timely charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") Regional Office in Maryland, on or about August 16, 2012.

9. Kima filed a complaint in this court within 90 days of the receipt of the right-to-sue letter from the EEOC, which is dated April 17, 2014.

## BACKGROUND

10. Kima was employed by Compass, Inc. from August 2009, during which period he worked in the capacity of a Residential Counselor, making about $18,000 per annum. In that Capacity, Kima was good at his job and had good evaluations for his productivity.

11. Kima was also highly qualified for his position in basic education with a college degree in Healthcare Administration, because his peers and colleagues in the same capacity only had high school diploma. He also exerted himself for the business growth and qualitative improvement of Compass

12. In or about May 2012, Kima applied for an open position as a Residential Coordinator with Compass. He was shortlisted and in fact interviewed for the position. Mr. Kima was adjudged to be the best interviewing candidate and was told he would receive his letter of promotion in due course.

13. However, Kima was denied the promotion because two program directors did not like him and would not want to work with him if he was promoted to the capacity of residential coordinator.

14. After Kima was denied the promotion, the position of residential coordinator remained vacant.

15. Kima was then promoted to the position of House Manager for Wilmont Turn, a position that was never published as vacant and for which he never interviewed, in lieu of the residential coordinator position for which he had interviewed and was denied,.

16. Soon after Kima was promoted as a House Manager for Wilmont Turn on February 13, 2012, Ms. Dewander Bell, ("Ms. Bell"), Residential Coordinator and Kima's immediate supervisor began to show racial bias and to create a hostile work environment against our client, and made every effort to scuttle Kima's success as a House Manager, because of his national origin.

17. Though Kima was in charge of making staff work schedule, yet Ms. Bell would randomly change staff work schedule without reference to Kima. This was an attempt to leave Kima stranded with few or no staff, either to give the impression no staff wanted to work with Kima, or to induce a last minute panic attack on Kima because in the absence of other supporting staff, Kima was left in a lurch and had to do all the work himself.

18. On Saturday, February 25, 2012, Ms. Bell came to Kima's office at about 11:45 A.M. to antagonize him; when she told Kima, among other things: **"you are not my pick for the position of House Manager, and you can verify this information with the Director of Program Services who holds the same view with me."** This statement was made in the presence and hearing of a third party.

19. On Tuesday March 6, 2012, while in Mr. Kima's office, Ms. Bell's instigated Mr. Kima' subordinate to undermine his official authority in an effort to humiliate him.

20. Ms. Bell coached all staff under Kima to respond in the negative if asked whether Kima was doing well as a house manager

21. On March 6, 2012 Ms. Bell was in Kima's office to request him to give her the company's expense credit card which was then in Kima's custody. Kima gave the credit card to Ms. Bell, but requested her to acknowledge that she had received the

credit card from him. Ms. Bell became incensed with rage against Kima at this request, using all kinds of racial slurs and foul language against Kima. She reminded Kima that he was not her pick for the position of House Manager for Wilmont Turn.

22. A few minutes after the foregoing incident, Kima overheard Ms. Bell in a telephone conversion when she said: **"I can't wait to have this stinking, stupid African shipped out of here and returned to wherever he came from …"** among other racial statements.

23. On Wednesday March 7, 2011 Kima was issued a query for an event which had occurred when he was off schedule, relating medication error. Kima had discovered this error when he resumed duty the next day.

24. The Medical Technician who had in fact made the mistake was excused, but Kima who was never at work when this error occurred was written up because of national origin.

25. On or about May 7, 2012, Kima issued a query to a subordinate for putting a resident at health risk when the resident's urgent medical appointment was rescheduled without approval; for lateness to work and for refusing to take reasonable instructions. Ms. Bell encouraged Kima' subordinate not to respond to the query. The subordinate tore and trashed Kima's query document before him to Ms. Bell's humiliating approval. There has been no other occasion where a House Manager had been disrespected by a subordinate with approval of a superior officer in Ms. Bell's position.

26. In or about May, 2012 Ms. Bell instigated two of Kima's subordinates to write false petitions alleging fraud and over time discrimination against Kima. These petitions

formed the basis of Kima's administrative suspension and demotion. Investigations confirmed that this was an orchestrated stratagem and a malicious and intentional build-up to find "reason" to rusticate Kima from his position of House Manager; a position for which he was not Ms. Bell's choice because of his national origin.

27. On May 25, 2012, following the foregoing events, Ms. Bell invited Kima to her office to sign a 90-day Performance Improvement Program (PIP). In a classical cascading intrigue and conflation of events, Ms. Bell followed her PIP action with the following other actions:

   i. invited Kima to her office on Friday, June 1, 2012, seven days into Kima's PIP evaluation, to inform Kima that he had been placed on administrative leave indefinitely;

   ii. invited Kima to her office on Wednesday, June 6, 2012, five days later and twelve days into Kima's PIP evaluation, to inform Kima that he had been demoted to the position of residential counselor, a position from which he had been promoted to a House Manager.

28. The instigated false petitions, the transactions between Ms. Bell and Kima, including her overt use of racial slurs, covert discrimination and disparate treatment of Kima based on his national origin, formed the basis of Ms. Bell's action above.

29. Kima's indefinite administrative leave and demotion occurred while his PIP action was subsisting, and there were no fresh allegations of wrong doing warranting these courses of action, at least before the performance evaluation was completed. .

30. These actions were taken to create a hostile work environment for Kima; humiliate and dampen his morale at work as a prelude to constructively dismiss him from work.

31. Kima has been severely emotionally distressed and has been diagnosed with work-related psychological problems for which he is undergoing evaluation.

32. Pursuant to Compass' corporate policy as exemplified by their Employee Handbook,"...**These performance appraisals shall be based on lawful, job related and non-discriminatory criteria and an evaluation of result achieved against specific, objective, measurable and consistently applied standards.**"

33. It is the practice of Compass to allow staff on PIP evaluation to serve out their designated evaluation time, after which they are evaluated. Kima was disparately treated when Ms. Bell cut him off before the completion of his 90 days PIP action by suspending and demoting him before and without evaluation.

34. Ms. Bell's action to place Kima on PIP evaluation and demote him within the period of evaluation was an intentional and malicious discriminatory action calculated to smear Kima with incompetence and prevent him from reapplying for the Residential Coordinator position for which Kima had earlier interviewed and was selected, but eventually denied. This position was left open and republished as open while Kima was placed on PIP, suspended and demoted.

35. After Kima was cleared of any wrong doing following the instigated false petitions, he was never returned to the position he occupied or a comparable position, contrary to Compass' policy.

36. In or about June 2012, Kima appealed Ms. Bell's decision to the Director of Human Resources and the Executive Director. On June 19, 2012, Ms. Bell's discriminatory decision received Compass' endorsement through the Director of Human Resources

and the Executive Director who approved Ms. Bell's actions, by denying Kima's appeal and siding with Ms. Bell.

37. Moreover, Kima's punishment endured from the inception of his indefinite suspension as his pay statement for that period showed that he was in fact not paid for that period; rather, his accumulated leave hours were deducted to cover this period when he was wrongfully placed on an indefinite administrative leave because of instigated false allegations.

38. Kima could not bear these discriminatory treatments and the hostile work environment which was created by Ms. Bell, and was forced to resign from Compass.

## STATEMENT OF CLAIM

## COUNT ONE

### DISPARATE TREATMENT IN VIOLATION OF 42 U.S.C §2000e-2(a)(1)

39. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 36 above as if herein set out seriatim.

40. The PIP action against Kima was not job related, but rather used as a vehicle to enhance and shield discrimination against him. Other similarly situated staff is allowed the benefit of pre-evaluation and post-evaluation phases of their PIP action to record improvement on perceived deficiency. Kima was disparately treated when he was suspended and demoted without allowing him the benefit of the two phases of the PIP action, in violation of Title VII of the Right Ac as amended.

41. Ms. Bell duty as a residential coordinator was to support the house managers under her authority, including Kima. She provided that support for other managers, but an

42. As a direct and proximate result of the conduct alleged herein, Kima lost promotion and the concomitant income to which he was otherwise entitled, except for denial due to his national origin. Kima continues to suffer economic loss due to denial of the position of Residential Coordinator and demotion from the position of House Manger

43. As a result of the intentional acts complained herein, Kima has suffered and will continue to suffer the loss of his career with Compass, as well as loss of salary, benefits and other compensation which such employment entailed, and has also suffered future pecuniary losses, emotional pain, suffering, inconvenience and other non-pecuniary losses

WHEREFORE, Plaintiff Peter Kima prays that this court enter judgment in his favor and against the Defendant as follows:

   a. That a finding be entered that the Defendant discriminated against the Plaintiff with malice or reckless indifference to Plaintiff's federally protected rights in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e as amended by the Civil Rights Act of 1991;

   b. That Plaintiff be awarded all wages, benefits and compensation lost due to Defendant's discriminatory acts;

   c. That Plaintiff be awarded compensatory and punitive damages in the maximum amount allowed by law;

   d. That Palintiff be awarded reasonable attorney's fee and costs;

   e. That Plaintiff be awarded pre-judgment interest; and

f. That Plaintiff be awarded such other and further relief as may be just and necessary.

## . COUNT TWO

## DISCRIMINATION BASED ON NATIONAL ORIGIN

44. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 40 above as if herein set out seriatim.

45. Kima's denial of the position Residential Coordinator for which he had successfully interviewed for the reason that two program directors would not want to work with him, was racially motivated because of his national origin, in violation of Title VII of the Civil Rights Act 1964, as amended.

46. The use of racial slur by Ms. Bell against Kima when she said of Kima: **"I can't wait to have this stinking, stupid African shipped out of here and returned to wherever he came from ...,"** was motivated by Ms. Bell's intolerance of Kima's national origin and discrimination based on national origin in violation of Title VII of the Civil Rights Act § 2000e as amended.

WHEREFORE, Plaintiff Peter Kima prays that this court enter judgment in his favor and against the Defendant as follows:

g. That a finding be entered that the Defendant discriminated against the Plaintiff with malice or reckless indifference to Plaintiff's federally protected rights in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e as amended by the Civil Rights Act of 1991;

h.  That Plaintiff be awarded all wages, benefits and compensation lost due to Defendant's discriminatory acts;

i.  That Plaintiff be awarded compensatory and punitive damages in the maximum amount allowed by law;

j.  That Palintiff be awarded reasonable attorney's fee and costs;

k.  That Plaintiff be awarded pre-judgment interest; and

l.  That Plaintiff be awarded such other and further relief as may be just and necessary.

## DEMAND FOR JURY TRIAL

Plaintiff requests that a trial by Jury be had on all issues so triable.

Respectfully submitted,

*[signature]*

Gini Okedi, Esq. .(Federal Bar Number: 17659)

OKEDI, NDI AND ASSOCIATES

7410 Georgia Avenue NW, Suite 4

Washington, DC 20012

(703)597-3826